


UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KB HOME JACKSONVILLE, LLC,

    Plaintiff,

v.

WESTFIELD INSURANCE COMPANY,

    Defendant.

CASE NO. 3:17-cv-566-J-32PDB

## COMPLAINT AND DEMAND FOR JURY TRIAL BY PLAINTIFF KB HOME JACKSONVILLE, LLC

Plaintiff KB Home Jacksonville, LLC ("KB Home"), by and through its undersigned counsel, sues Defendant Westfield Insurance Company ("Westfield") and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for breach of Westfield's duty to defend KB Home as an Additional Insured under general liability insurance policies in connection with notices of claims under Chapter 558, Florida Statutes ("558 Notices"), and subsequent lawsuits filed by various individual homeowners or groups of homeowners against KB Home in the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida ("Underlying Lawsuits") (collectively, the "Homeowner Claims"). KB Home also seeks a declaration of its rights to a defense as an Additional Insured under the policies issued by Westfield.

2. The Homeowner Claims allege property damage resulting from alleged construction defects due to work performed by KB Home's subcontractor, Wilkinson and Sons Plastering, Inc. ("Wilkinson").

3. Wilkinson was contractually obligated to and did purchase commercial general liability ("CGL") insurance policies from Westfield as detailed in **Exhibit 1** hereto.

4. Each of the CGL policies identified in **Exhibit 1** provides coverage to KB Home as an Additional Insured and requires that Westfield defend KB Home against allegations of liability because of property damage resulting from Wilkinson's work.

5. KB Home tendered the Homeowner Claims to Westfield and demanded a defense. However, Westfield failed to respond to the demands for such an extended period of time that its nonresponse was an effective denial. As a result, KB Home has been forced to bear the costs of defending itself against the Homeowner Claims, even though such costs are the obligation of Westfield.

## PARTIES AND JURISDICTION

6. Plaintiff KB Home is a Delaware limited liability company authorized to do business in the State of Florida, where it is engaged in the business of building homes. KB Home's sole member is KB Home Florida, LLC, a Delaware limited liability company. KB Home Florida, LLC's sole member is KB Home, a corporation organized under the laws of Delaware with its principal place of business in Los Angeles, California.

7. Upon information and belief, Defendant Westfield is a corporation organized under the laws of Ohio with its principal place of business in Westfield Center, Ohio. Westfield is licensed to and does carry on business as a property and casualty insurer in the State of Florida.

8. Westfield issued CGL policies to Wilkinson, which policies provide coverage to KB Home as an Additional Insured. Upon information and belief, Wilkinson is a corporation organized under the laws of Florida with its principal place of business in Palatka, Florida.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332 because this matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or missions giving rise to the claims occurred in this District; the properties that are the subject of the Homeowner Claims are situated in this District; and Westfield conducts business in this District and sold the CGL policies at issue in this matter in this District.

## FACTUAL ALLEGATIONS

### I. THE WORK PERFORMED BY WILKINSON

11. KB Home was the general contractor for four residential developments known as Adams Lake, Cedar Glen, Dunns Creek, and Meadow Downs, each of which involved the construction of single family homes located in Duval County, Florida (the "Projects").

12. On or about July 29, 2004, and on or about November 9, 2005, KB Home entered into master subcontracts with Wilkinson, pursuant to which Wilkinson agreed to act as a stucco subcontractor for all projects on which it performed work for KB Home, including the Projects. The subcontracts are attached as **Exhibits 2 and 3**.

13. The subcontracts required that Wilkinson obtain CGL insurance naming KB Home—as well as its parents, subsidiaries, and affiliates—as an Additional Insured with respect to liability for property damage resulting from Wilkinson's work on the Projects, including property damage within the "products-completed operations hazard."

## II. THE WESTFIELD POLICIES

14. Upon information and belief, Wilkinson purchased at least seven CGL policies from Westfield providing products-completed operations coverage for liability because of property damage resulting from Wilkinson's work (the "Policies"). The Policies are listed in **Exhibit 1** and attached as **Exhibits 4 to 10**. For each annual period, the Policies provide $1 million in per occurrence limits and $2 million in aggregate limits for products-completed operations.

15. The insuring agreements of the Policies state, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking those damages . . . .

16. The Policies define "property damage" to include:

> a. Physical injury to tangible property, including all resulting loss of use of that property . . . . or

    b. Loss of use of tangible property that is not physically injured . . . .

 17. For coverage to be afforded, "property damage" must be caused by an "occurrence," which is defined under the Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

 18. The Additional Insured – Owners, Lessees or Contractors – Completed Operations Endorsements in the Policies state, in relevant part:

> Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in Schedule . . . .

 19. The Schedules of the Additional Insured – Owners, Lessees or Contractors – Completed Operations Endorsements in the 2006-07 to 2008-09 Policies (**Exhibits 4 to 6**) show KB Home and/or its affiliates at the locations of the Projects.

 20. The Schedules of the Additional Insured – Owners, Lessees or Contractors – Completed Operations Endorsements in the 2013-14 to 2016-17 Policies (**Exhibits 7 to 10**) show "All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured." KB Home's subcontracts with Wilkinson required that KB Home be named as an Additional Insured.

### III. THE HOMEOWNER CLAIMS

 21. On or about August 8, 2016, individual homeowners in the Adams Lake, Cedar Glen, Dunns Creek, and Meadow Downs developments began serving KB Home with 558 Notices. To date, individual homeowners have served KB Home with 101

5

separate 558 Notices as detailed in **Exhibit 11** hereto. KB Home continues to receive 558 Notices from individual homeowners.[1]

22. On or about September 6, 2016, individual homeowners or groups of homeowners who had already served KB Home with 558 Notices began filing the Underlying Lawsuits against KB Home. To date, individual homeowners or groups of homeowners have filed 25 Underlying Lawsuits, encompassing 80 separate 558 Notices, as detailed in **Exhibit 11** hereto. KB Home continues to be served with Underlying Lawsuits by individual homeowners or groups of homeowners.[2]

23. Both the 558 Notices and the Underlying Lawsuits allege that the stucco installation on each homeowner's home was defective; did not meet the applicable Florida Building Code; and did not meet industry standards. Wilkinson installed the stucco on each of the homes that is the subject of a 558 Notice and/or Underlying Lawsuit.

24. Both the 558 Notices and the Underlying Lawsuits further allege that the allegedly defective stucco resulted in significant water intrusion and property damage to the homes, for which the homeowners seek damages, costs, and interest.

## IV.   KB HOME'S DEMANDS FOR A DEFENSE

25. On or about September 8, 2016, KB Home began tendering the 558 Notices and Underlying Lawsuits to Wilkinson and demanding a defense and indemnity

---

[1] The 558 Notices are not attached due to volume.

[2] The complaints and/or amended complaints in the Underlying Lawsuits are not attached due to volume.

in connection therewith. KB Home also requested copies of all relevant insurance policies issued to Wilkinson pursuant to Florida Statutes, Section 627.4137.

26. On or about November 15, 2016, after Westfield had been identified as Wilkinson's insurer, KB Home began tendering further 558 Notices and Underlying Lawsuits to both Wilkinson and Westfield and demanding a defense and indemnity in connection therewith. KB Home also requested copies of all relevant insurance policies issued to Wilkinson pursuant to Florida Statutes, Section 627.4137.

27. On or about November 21, 2016, Westfield provided a "Disclosure of Insurance Policy limits pursuant to Florida Statute 627.7264" (i.e., what is now Section 627.4137) in response to KB Home's tender of a single 558 Notice. Westfield's "Disclosure" did not include a copy of any insurance policy. Westfield also requested information not necessary to determine KB Home's Additional Insured status, which information KB Home nevertheless provided on or about December 14, 2016.

28. On or about November 28, 2016, Westfield provided a second "Disclosure of Insurance Policy limits pursuant to Florida Statute 627.7264" in response to KB Home's tender of a second 558 Notice. Westfield's "Disclosure" did not include a copy of any insurance policy. Westfield also requested information not necessary to determine KB Home's Additional Insured status, which information KB Home nevertheless provided on or about December 15, 2016.

29. On or about December 12, 2016, Westfield provided a third "Disclosure of Insurance Policy limits pursuant to Florida Statute 627.7264" in response to KB Home's tender of a third 558 Notice. Westfield's "Disclosure" did not include a copy of any

insurance policy. Westfield also requested information not necessary to determine KB Home's Additional Insured status, which information KB Home nevertheless provided on or about December 28, 2016.

30. On or about December 12, 2016, Westfield provided a fourth "Disclosure of Insurance Policy limits pursuant to Florida Statute 627.7264" in response to KB Home's tender of a fourth 558 Notice. Westfield's "Disclosure" did not include a copy of any insurance policy. Westfield also requested information not necessary to determine KB Home's Additional Insured status, which information KB Home nevertheless provided on or about December 28, 2016.

31. On or about December 19, 2016, Westfield provided a fifth "Disclosure of Insurance Policy limits pursuant to Florida Statute 627.7264" in response to KB Home's tender of a fifth 558 Notice. Westfield's "Disclosure" did not include a copy of any insurance policy. Westfield also requested information not necessary to determine KB Home's Additional Insured status, which information KB Home nevertheless provided on or about January 2, 2017.

32. On or about March 1, 2017, having received no further response regarding the five acknowledged tenders for more than two months, and having received no response of any kind regarding the other tenders for as long as six months, KB Home reiterated its demand for a defense and indemnity in connection with all of the Homeowner Claims.

33. On or about March 13, 2017, having received no insurance policies from Westfield, KB Home reiterated its demand for copies of all relevant insurance policies issued to Wilkinson pursuant to Florida Statutes, Section 627.4137.

34. On or about March 17, 2017, Westfield responded to the request for policies pursuant to Florida Status, Section 627.4137. Westfield also requested information not necessary to determine KB Home's Additional Insured status and stated: "Westfield is currently reviewing your request for the defense and indemnity of KB Home."

35. To date, Westfield has not provided KB Home with a coverage decision under the Policies.

## COUNT I
## DECLARATORY JUDGMENT AGAINST WESTFIELD

36. KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. Upon information and belief, Westfield disputes one or more of the allegations herein, including, without limitation, the allegation that Westfield owes a duty to defend KB Home as an Additional Insured in connection with the Homeowner Claims.

38. By reason of the foregoing, an actual and justiciable controversy exists between KB Home and Westfield regarding their respective rights and obligations under the Westfield Policies, including, but not limited to, Westfield's obligation to defend KB Home as an Additional Insured in connection with the Homeowner Claims.

39. An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

40. KB Home is entitled to a declaratory judgment, *inter alia*, that:

(a) Westfield's duty to defend KB Home was triggered by the various 558 Notices and Underlying Lawsuits in connection with the Homeowner Claims;

(b) Westfield has a personal and indivisible obligation to provide a defense to KB Home in connection with the Homeowner Claims;

(c) Westfield is jointly and severally liable for all defense costs incurred by KB Home in connection with the Homeowner Claims;

(d) Westfield is obligated to reimburse KB Home for all attorneys' fees and other litigation costs incurred in connection with its defense of the Homeowner Claims from no later than the earliest date on which Westfield was notified of the various 558 Notices and Underlying Lawsuits in connection with the Homeowner Claims; and

(e) Westfield owes a present duty to defend KB Home in connection with the Homeowner Claims.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Westfield awarding KB Home the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Section 627.428, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT II
## BREACH OF DUTY TO DEFEND AGAINST WESTFIELD

41. KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

42. The Policies are written contracts of insurance obligating Westfield to defend KB Home, as an Additional Insured, against any claim seeking damages because of property damage that takes place during the policy period and is caused by an occurrence. Westfield's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

43. The 558 Notices and Underlying Lawsuits in connection with the Homeowner Claims allege facts that create the potential for coverage under the Policies, thereby triggering Westfield's duty to defend.

44. Westfield has a personal and indivisible obligation to provide KB Home, as its Additional Insured, with a defense in connection with the Homeowner Claims. Westfield is jointly and severally liable for all defense costs incurred by KB Home in connection with the Homeowner Claims.

45. Westfield has breached its duty to defend KB Home under the Policies by refusing to defend KB Home in connection with the Homeowner Claims.

46. As a direct and proximate result of Westfield's breach of its duty to defend, KB Home has suffered damages, including, but not limited to, attorneys' fees and other costs KB Home has been forced to incur to defend itself in connection with the Homeowner Claims. These damages are continuing in nature.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Westfield awarding KB Home compensatory damages directly and proximately caused by Westfield's breach of its contractual duty to defend KB Home, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Section 627.428, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## JURY DEMAND

KB Home hereby demands a trial by jury of all issues triable as of right by jury in its Complaint.

Dated: May 16, 2017                                         Respectfully submitted,

 */s/ Matthew R. Cogburn*
Matthew R. Cogburn (Trial Counsel)
Florida Bar No. 0288100
COGBURN LAW FIRM, P.A.
601 South Boulevard
Tampa, FL 33607
Telephone: 813-250-3444
Facsimile: 813-229-4133
mcogburn@cogburnlegal.com

Of counsel:
Alex J. Lathrop
Stephen S. Asay
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
alex.lathrop@pillsburylaw.com
stephen.asay@pillsburylaw.com

*Attorneys for Plaintiff KB Home Jacksonville, LLC*